

# The Attorney General of Texas

May 20, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Al Hurley
President
North Texas State University
P. O. Box 13426
Denton, Texas    76203

Opinion No. MW-475

Re:    Authority    of    state
universities    to    execute
contractual  indemnity  agree-
ments, and related questions

Dear Mr. Hurley:

You have asked about the authority of the state to indemnify others contractually. If such authority exists, you ask what acts can be covered by the indemnity agreement. If it does not exist, you ask whether a contract containing such an agreement would be void or voidable.

The following clause is one, you advise, that commonly is found in contracts proffered by the university:

> University shall indemnify and hold harmless contractor from and against any and all claims, actions, or damages including attorneys fees caused by or arising out of the performance, failure to perform or breach of any of the university's obligations under this lease.

Some indemnity agreements require the indemnitor to hold the indemnitee harmless from liability arising by reason of the indemnitee's own acts, or arising from the acts of third parties. See 14 Tex. Jur. III Contribution and Indemnification $24, at 675. But see V.T.C.S. arts. 249d, 2212b. The clause set out above is not of that type, however. It purports to indemnify only against harm arising from acts of the university itself.

To the extent that such a clause merely reinforces obligations the university has legally undertaken elsewhere, and does not expand or increase the school's liability or the scope of its liability, it is harmless surplusage. But to the extent that it purports to create liability or potential liability on the part of the university beyond its statutory or constitutional powers to incur liability, it is invalid. The governing bodies of state universities are creatures of statute and may constitutionally exercise only powers properly

delegated to them by the legislature.   See Foley v. Benedict, 55 S.W.2d 805 (Tex. 1932).

A contractually imposed obligation of indemnity creates a "debt" in the constitutional sense unless at the time of the agreement it is within the lawful and reasonable contemplation of the parties that it will be satisfied out of current revenues or some currently available fund.   Tex. Const. art. III, §49, art. XI, §§5, 7; T & N.O.R.R. Company v. Galveston County, 169 S.W.2d 713 (Tex. 1943).   See also Brown v. Jefferson County, 406 S.W.2d 185 (Tex. 1966).   Cf. City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex. 1966) (duration and extent of liability controlled by agency); Harris County v. Dowlearn, 489 S.W.2d 140 (Tex. Civ. App. - Houston [14th Dist.] 1973, writ ref'd n.r.e.) (prohibition not applicable to non-contractual obligations).   Section 49, article III of the Texas Constitution commands that "no debt shall be created by or on behalf of the State...."   The only exceptions are for supplying casual deficiencies of revenue, repelling invasion, suppressing insurrection, defending the state in war, or paying "existing debt."   The term "existing debt" apparently refers to the debt existing in 1876 when the provision was adopted.   Further, the provision places a $200,000 limit on "debt created to supply deficiencies in the revenue."

There are no saving provisions in the article III, section 49 constitutional prohibition against state debt such as there are in the article XI, sections 5 and 7 provisions dealing with debts of cities and counties.   The latter section provides:

> [N]o debt for any purpose shall ever be incurred
> in any manner by any city or county unless
> provision is made, at the time of creating the
> same, for levying and collecting a sufficient tax
> to pay the interest thereon and provide at least
> two percent (2%) as a sinking fund....

The Texas Supreme Court has held that this provision does not prevent a county from agreeing to assume indebtedness in the form of a "hold harmless" agreement so long as provision is made for levying and collecting the tax required.   Brown v. Jefferson County, supra.   See also County of Ector v. City of Odessa, 492 S.W.2d 360 (Tex. Civ. App. - El Paso 1973, no writ).

In light of the restrictive constitutional prohibition against state debt, especially when coupled with the "cash basis" requirements of article III, section 49a of the constitution, a state agency will ordinarily be unable to execute an enforceable indemnity agreement in favor of another party.   Persons contracting with agents of the state are bound at their peril to ascertain the limitations of the agent's authority and cannot recover to the extent the agent exceeds it.

State v. Ragland Clinic-Hospital, 159 S.W.2d 105 (Tex. 1942). Nor will statutory "control and management" authority in the agent suffice if there is no constitutional warrant for it. T & N.O.R.R. Company v. Galveston County, supra. See Kearse v. Kearse, 276 S.W. 690 (Tex. 1925). Constitutional limitations must be read into a statute so as "to restrict literalism to proper bounds." Kearse v. Kearse, supra; cf. Educ. Code §105.41 (management and control of N.T.S.U.).

A relatively recent Texas Supreme Court case might at first appear to undermine the holding of State v. Ragland Clinic-Hospital, supra, and the efficacy of the section 49, article III "debt" prohibition, but not if seen in proper perspective. In State v. City National Bank of Austin, 603 S.W.2d 764 (Tex. 1980), the court held a state agency liable for the "holdover occupancy" of office building space after the expiration of a four year lease containing a "holdover" clause. The state contended, as briefs on file with the court reveal, that the "holdover" arrangement was a new one negotiated with the lessor after the original lease expired, and that the agency was prohibited from contracting with respect to it by both the "pre-existing law" provision of the constitution (article III, section 44) and a statute. But the state did not claim that the original lease had been invalid for lack of authority in the agency to incur debt on behalf of the state. Since the validity of the original lease contract -- which contained a "holdover" clause -- was uncontested, the court said (after noting the state's contentions applicable only to an alleged "subsequent" agreement): "In view of our holding that the State is liable because of the written agreement, we find it unnecessary to discuss these points." Similarly, the prohibition of section 49, article III was not put at issue in either Board of Regents of the University of Texas v. S. & G. Construction Company, 529 S.W.2d 90 (Tex. Civ. App. - Austin 1975, writ ref'd n.r.e.), or University of Texas System v. Robert E. McKee, Inc., 521 S.W.2d 944 (Tex. Civ. App. - Eastland 1975, writ ref'd n.r.e.).

We think it continues to be the law in this state that the State of Texas cannot be held liable for a contractual obligation concluded by an agent of the state in excess of his authority, and that no state agent can be given authority to incur or create a debt on behalf of the state in contravention of the constitution. See City of Wichita Falls v. Kemp Public Library Board of Trustees, 593 S.W.2d 834 (Tex. Civ. App. - Fort Worth 1980, writ ref'd n.r.e.). In holding that Jefferson County had complied with the constitutional requirement that provision be made for levying and collecting the required tax, the supreme court in Brown v. Jefferson County, supra, did not declare that the county was unconditionally bound to perform the indemnity agreement as agreed. It said:

> The 'hold and save' agreement herein involved...
> may be one which may be funded and paid off

> without violating any constitutional debt limit or taxing restrictions applicable to counties. <u>If</u> such obligation may be so discharged, the County has bound itself to do so.... <u>Necessarily, the agreement to levy a 'sufficient tax' from year to year is subject to constitutionally imposed restrictions</u>.... 406 S.W.2d 189, 190. (Emphasis added).

See <u>Galveston, H & S.A.Ry. Company v. Uvalde County</u>, 167 S.W.2d 305 (Tex. Civ. App. - San Antonio 1942, writ ref'd w.o.m.); Attorney General Opinion WW-423 (1958). <u>See also</u> Attorney General Opinion C-385 (1965).

We advise, therefore, that only those obligations which the state agency or university has the constitutional and statutory power to discharge may be the subject of a valid indemnity agreement by it in favor of others. An indemnity agreement negotiated by a state instrumentality in violation of law is unenforceable and void, although an invalid indemnity clause in an otherwise enforceable contract will not ordinarily invalidate the remainder of the contract. See <u>Williams v. Williams</u>, 569 S.W.2d 867 (Tex. 1978); <u>Paschall v. Gulf C. & S.F.Ry. Company</u>, 100 S.W.2d 183 (Tex. Civ. App. - Dallas 1936), <u>modified and aff'd sub nom. Campbell v. Paschall</u>, 121 S.W.2d 593 (Tex. 1938). <u>See generally</u> Susman, <u>Contracting With the State Fiscal and Constitutional Limitations</u>, 44 Tex. L.Rev. 106 (1966).

### S U M M A R Y

> Only those obligations which the state agency or university has the constitutional and statutory authority to discharge may be the subject of a valid indemnity agreement by it in favor of others. An indemnity agreement negotiated by a state instrumentality in violation of law is unenforceable and void, although an invalid indemnity clause in an otherwise enforceable contract will not ordinarily invalidate the remainder of the contract.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Virgina Daugherty
Rick Gilpin
Patricia Hinojosa
Jim Moellinger
Bruce Youngblood