**William SATTERWHITE, Jr., Appellant,**

**v.**

**The STATE of Texas.**

**No. 1474–97.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 23, 1998.

---

Brian W. Wice, Houston, for appellant.

Jim Vollers, Special Pros., Matthew Paul, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge, delivered the opinion of the Court joined by MANSFIELD, KELLER, HOLLAND and WOMACK, Judges.

Appellant was indicted for violating V.T.C.A. Penal Code, Section 38.122 which makes it an offense for a person, with intent to obtain an economic benefit for himself, to hold himself out as a lawyer unless he is currently licensed to practice law in this State, another state, or a foreign country, and is in good standing with the State Bar of Texas. The indictment alleged that the offense was committed on or about December 13, 1993. On November 15, 1995, a jury found appellant guilty as charged in the indictment and assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice at a term of four and one-half years, and assessed a $7,500.00 fine.

On direct appeal, the Corpus Christi Court of Appeals affirmed appellant's conviction, rejecting appellant's contention that the evidence was legally insufficient to sustain the jury's verdict. *Satterwhite v. State*, 952 S.W.2d 613 (Tex.App.-Corpus Christi, 1997). The majority held that, "[t]he retroactive effect of the payment of past-due State Bar dues had no effect on appellant's conviction for falsely holding himself out as an attorney while not in good standing with the State Bar." *Id.* at 618. To the contrary, the dissent concluded that appellant's payment of dues retroactively returned him to his former status and good standing with the State Bar and therefore the evidence was legally insufficient to show that appellant was not in good standing with the State Bar at the time of the commission of the offense. *Id.* at 621 (Hinojosa, J. dissenting).

The Court of Appeals' rendition of the facts is correct, therefore we take the liberty to recite them for the benefit of the bench and bar:

" On May 1, 1993, appellant was notified that his annual State Bar dues were due and payable by June 1, 1993. Prior to May 1, 1993, however, appellant was suspended for failure to meet the MCLE requirements. On July 1, 1993, the 30–day 'grace period' afforded attorneys to pay their bar dues had expired. Appellant was not sent a reminder notice because, as stated above, appellant was already on suspension for noncompliance with the MCLE requirements.

"On September 1, 1993, a letter was mailed from the State Bar to appellant notifying appellant that his license to practice law was suspended for nonpayment of State Bar dues. In October 1993, appellant sent two checks to the State Bar. These checks were not written in the correct amount and were returned by the State Bar. Appellant sent another check in November 1993, which was also written for an improper amount and returned. On November 8, 1993 a check was received from appellant in the correct amount, but this check was not paid due to insufficient funds. It was not until January 4, 1994, that appellant finally paid his bar dues in the proper amount.

"However, on December 13, 1993, at a time when appellant's licence to practice law in Texas was suspended, appellant represented John Lemke as his attorney of record in seven felony criminal cases. For this conduct, appellant was indicted under section 38.122 of the Texas Penal Code for falsely holding himself out as a lawyer." *Satterwhite v. State*, 952 S.W.2d at 614.

In the case before us, a case of first impression, we are faced with the issue of whether a retroactive return to pre-suspension status via the payment of past-due State Bar dues excuses an attorney from prosecution for illegal conduct committed by an attorney during that attorney's period of suspension. We hold that it does not and affirm the decision of the Court of Appeals.

■ Appellant was convicted for violating Section 38.122 of the Texas Penal Code (Vernon 1994). Section 38.122 provides:

"(a) A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

"b) An offense under Subsection (a) of this section is a felony of the third degree.

"c) Final conviction of falsely holding oneself out to be a lawyer is a serious crime for all purposes and acts, specifically including the State Bar Rules."

The record before us reflects that appellant intentionally and knowingly violated Section 38.122. First, appellant intended to obtain an economic benefit for himself by representing Mr. Lemke. Second, appellant held himself out as a lawyer to Lemke. Thirdly, appellant was not in "good standing" [1] with the State Bar at the time he represented John Lemke because he was in default in the payment of his bar dues resulting in the suspension of his law license.[2] Since the language of Section 38.122 provided no exceptions, appellant's prosecution and subsequent felony punishment under the statute was proper.

■ However, appellant argues that the retroactivity clause of Article III, section 7(A) of the State Bar Rules affects a lawyer's "good standing" insofar as liability under Section 38.122 is concerned. We disagree. Paying delinquent bar dues does not suggest that the attorney is absolved from prosecution for illegal conduct committed during the period of suspension.

Article III, Section 7(A) of the Texas State Bar Rules provides:

"When a member, who has been suspended for nonpayment of fees or assessments, removes such default by payment of fees or assessments then owing, plus an additional amount equivalent to one-half the delinquency, the suspension shall automatically be lifted and the member restored to former status. Return to former status shall be retroactive to inception of suspension, **but shall not affect any proceeding for discipline of the member for professional misconduct**." TEX. STATE BAR R. art. III, Section 7(A), *reprinted in* TEX. GOV'T CODE ANN., Title 2, subtitle G. app. (Vernon 1983) (emphasis added).

We find that the emphasized language of section 7(A) only affects appellant's ability to resume the status of an active member of the State Bar.[3] Upon payment of his delinquent bar dues, appellant does not have to be re-admitted to the Bar, nor does he have to show his qualifications or competence to practice law. At most, the retroactivity clause places appellant in his previous position of being a licensed attorney authorized to practice law in Texas. The language of section 7(A) also indicates that appellant may still face possible administrative discipline by

---

1. The term "Member in Good Standing" as defined by Article I of the State Bar Rules means a member of the State Bar who is not in default in payment of dues and who is not under suspension from practice. *See* TEX. STATE BAR R. art. I, *reprinted in* TEX. GOV'T CODE ANN , title 2, subtitle G app. (Vernon 1994).

2. The State Bar Rules of Texas provide for the automatic suspension from the practice of law of any member who is in default of payment of membership fees. TEX. STATE BAR R. art. III, Section 5 (1983). Article III, section 5, specifically states that, "Any practice of law during such suspension shall constitute professional misconduct and subject the member to discipline." *Id.* This point is reiterated under Texas Disciplinary Rule of Professional Conduct

8.04(a)(11), which states that a lawyer shall not "engage in the practice of law when the lawyer's right to practice has been suspended or terminated including situations where a lawyer's right to practice has been administratively suspended for failure to timely pay required fees." TEX. DISCIPLINARY R. OF PROF. CONDUCT 8.04(a)(11) (1994), *reprinted in* TEX. GOV'T CODE ANN., title 2, subtitle G app. (Vernon Supp.1996) (TEX. STATE BAR R. art. X, section 9).

3. The Code Construction Act requires that "words and phrases shall be read in context and construed according to rules of grammar and common usage," unless they "have acquired a technical or particular meaning." TEX. GOV'T CODE ANN., Section 311.011 (Vernon 1988).

the State Bar for any conduct which occurred prior to the lifting of his suspension. Appellant is still subject to prosecution for illegal conduct committed by him during the period of suspension and any attempt by the State Bar to enact a rule which would alter or negate the Legislature's creation of a criminal offense would be unconstitutional. *See McDonald v. Denton,* 63 Tex.Civ.App. 421, 132 S.W. 823 (1910), *error denied* 104 Tex. 206, 135 S.W. 1148; *Brown Cracker & Candy Co. v. City of Dallas,* 104 Tex. 290, 137 S.W. 342 (1911)(If an executive agency or a local government should take action in the suspension of a law, independently of any delegation by the Legislature, that action could be nullified under Article 1, Section 28 of the Texas Constitution without a consideration of the question of legislative declaration of power.) Therefore, we hold that the retroactivity clause of section 7(A) does not affect appellant's criminal prosecution, but is strictly applicable to administrative proceedings conducted by disciplinary officials with the State Bar.

To support his position, appellant relies upon *Hill v. State,* decided by this Court almost three decades before the adoption of Section 38.122 by the Texas Legislature. Texas Penal Code, Section 38.122, added by Acts 1993, 73rd Leg., ch. 723, Section 5, eff. Sept. 1, 1993. This Court in *Hill v. State,* 393 S.W.2d 901 (Tex.Cr.App.1965) dealt solely with the issue of whether a defendant who was represented by an attorney during the period of time that the attorney's license was suspended for failure to pay bar dues was entitled to a new trial because of ineffective assistance of counsel. In *Hill,* this Court concluded that the status of a delinquent attorney not being a member of the State Bar of Texas does not place him in the position of being unlicenced to practice law in this State. *Id.* at 904. We further noted that "[h]e [a delinquent attorney] only has to pay his dues to resume his status as a 'prac-

ticing lawyer.' Such attorney does not have to again show his fitness or qualifications to practice law." *Id.* at 904. This Court also concluded that such attorney "does not have to be re-admitted to the practice," and that "[h]is competency as an attorney has not been diminished." *Id.* at 904. Finally, we stated that the attorney faces no future disbarment proceedings, and he "automatically resumes his status as an active member of the State Bar of Texas." *Id.* at 904.

However, our holding in *Hill* and in another case recently decided by this Court, *Cantu*[4], can be distinguished from the instant case. Unlike the case at bar where this Court is deciding the issue of whether an attorney's payment of delinquent bar dues and his acts during the period of suspension were validated because his membership in the State Bar was "revitalized" retroactively, *Hill* and *Cantu* deal with whether a criminal defendant received effective assistance of counsel when represented by an attorney not in good standing with the Texas State Bar.

Therefore, we conclude that the Court of Appeals did not err in holding that the evidence was sufficient as a matter of law to sustain the jury's finding that appellant was not in good standing with the State Bar. The retroactive effect of the payment of past-due State Bar dues has no effect on appellant's conviction for falsely holding himself out as an attorney while not in good standing with the State Bar. The judgment of the Court of Appeals is hereby affirmed.

MANSFIELD, J., filed a concurring opinion.

MANSFIELD, Judge, concurring.

I join the opinion of the Court. It is clear from the record that appellant, knowingly and intentionally, falsely held himself out as a lawyer in violation of Texas Penal Code

---

4. In *Cantu v. State,* 930 S.W.2d 594 (Tex.Cr.App. 1996), this Court resolved the issue of whether a lawyer's suspension for failing to respond to demands from the State Bar Grievance Committee for information deprived the defendant of his Sixth Amendment right to effective assistance of counsel. We noted that "while state law may sometimes permit technical violations to be cured retroactively after the defect is removed, *see Hill v. State,* 393 S.W.2d 901, 904 (Tex.Cr.App.1965)(failure to pay bar dues), technical violations do not constitute a denial of counsel even when removing the defect would not retroactively restore counsel's good standing status." *Id.* at 598.

§ 38.122. The State met its burden of proving, beyond a reasonable doubt, appellant continued to practice law despite having knowledge that he was not in good standing with the State Bar of Texas for failure to pay his dues.

Concern has been expressed that our holding in this case might lead to criminal liability for, potentially, thousands of attorneys who inadvertently send their bar dues in a few days late, whose checks are "lost in the mail" or who, accidently, send a check for the wrong amount. Another situation, quite common, is where the check is returned for insufficient funds when the remitter, in good faith, believed there were sufficient funds in his account to cover the check. I believe this concern is misplaced. The State must prove intentional, knowing or reckless conduct on the part of the accused to obtain a conviction under Texas Penal Code § 38.122; such would rarely be provable in the instances cited in the two previous sentences. In any event, anyone indicted under section 38.122, where such circumstances existed, would have available the defense of mistake of fact under Texas Penal Code § 8.02.

With these comments, I join the opinion of the Court.

PRICE, Judge, filed a dissenting opinion joined by BAIRD, OVERSTREET and MEYERS, Judges.

Because I find the majority's statutory analysis flawed, I dissent.

Appellant's State Bar dues were due and payable on June 1, 1993. Following a thirty-day grace period, appellant was suspended for failing to pay his bar dues.[1] Between October and January, appellant sent a total of four checks to the State Bar, as payment of his dues. However, three of the checks were not written for the correct amount, and one was for the correct amount, but was not paid due to insufficient funds. Finally, on January 4, 1994, appellant paid his bar dues in the proper amount.

---

1. At the time of this suspension, appellant was not sent a reminder notice, because he was already on suspension for noncompliance with

On December 13, 1993, appellant represented one John Lemke in seven felony cases. As a result of this, an indictment was filed against appellant on May 27, 1994, and he was subsequently re-indicted, the latter filed on October 17, 1995. Appellant was eventually convicted under TEX. PEN.CODE ANN. 38.122 (Vernon 1994), titled "Falsely Holding Oneself Out as a Lawyer."

Ultimately, this is a case of statutory interpretation, based on the interaction between TEX. PEN.CODE § 38.122 and TEX. STATE BAR R. art. III, § 7, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon 1988). As we have previously stated, when interpreting a statute, we look to the literal text for its meaning, and we ordinarily give effect to that plain meaning. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). The only exceptions to this rule are where application of the statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, or if the plain language is ambiguous. *Id.*

§ 38.122(a) provides that:

A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she *is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas* and the state bar or licensing authority of any and all other states and foreign countries where licensed. (emphasis added)

Two things are immediately discernible from the language of the statute. First, the term "currently" only modifies "licensed to practice law"; that is, it does *not* modify "good standing." Also, the use of the phrase "is in good standing with the State Bar of Texas" indicates that this provision of the penal code fully incorporates, *without modification,* the State Bar concept of "good standing."

Art. III, § 7(A) of the State Bar Rules provides that:

MCLE requirements. Appellant subsequently met those requirements as of August 3, 1993.

When a member, who has been suspended for nonpayment of fees or assessments, removes such default by payment of fees or assessments then owing, plus an additional amount equivalent to one-half the delinquency, the suspension shall automatically be lifted and the member restored to former status. *Return to former status shall be retroactive to inception of suspension, but shall not affect any proceeding for discipline of the member for professional misconduct.* (emphasis added)

It is clear from the language of the rule that an attorney's former status is returned once payment is made, and that it is deemed to apply from the initial date of suspension. However, this retroactivity does not apply in regard to disciplinary measures.

Reading the penal statute and the State Bar Rule together, then appellant's conduct certainly did not fall under the prohibition of § 38.122. When appellant paid his dues on January 4, 1994, his former status of good standing was reinstated and was deemed to go back to July 1, 1993. As a result, appellant does not fit within the prohibition of § 38.122, since on the date that the alleged criminal conduct took place, December 13, 1993, he was deemed, retroactively, to have been in good standing with the Bar.

Nevertheless, the majority gives two rationales for affirming appellant's conviction. First, it argues that the language of Art. III, § 7, which provides that the retroactive return to good status "... shall not affect any proceeding for discipline of the member for professional misconduct" still allows for appellant to be prosecuted under § 38.122. *Ante,* at 628. Although it is unclear, it appears that the majority is arguing that prosecution under § 38.122 is a "proceeding for discipline of the member for professional misconduct." [2] I disagree. The language of Art. III, § 7, which states that the retroactive return to former status "... shall not affect any proceeding for discipline of the member for professional misconduct," can only reasonably be interpreted to cover disciplinary proceedings by the State Bar, and not criminal prosecutions. Furthermore, there is nothing in the State Bar Rules or anywhere else to suggest that this language encompasses a criminal prosecution; in fact, the contrary appears to be the case.[3]

2. The majority states that the language of section 7(a) "... indicates that appellant may still face administrative discipline by the State bar for any conduct which occurred prior to the lifting of his suspension. Appellant is still subject to prosecution for illegal conduct committed by him during the period of suspension ..." *Ante,* at 628 (slip op. at 6). Taken together, these two sentences indicate that the majority is arguing that prosecution under § 38.122 is a "proceeding for discipline of the member for professional misconduct."

3. *See, e.g.,* TEX. GOV'T CODE § 81.071(f) (distinguishing between prosecution of an attorney in a disciplinary action and conviction for a criminal act based either on the weight of the conviction or on conduct by the attorney that led to the attorney's conviction); TEX. STATE BAR R. art. XIII, § 7, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G-app. (Vernon Supp.1998) (disciplinary proceedings are to be imposed by Texas Supreme Court or State Bar); TEX R. DISCIPLINARY P. Preamble, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) (Texas Supreme Court has constitutional and statutory responsibility within Texas for lawyer discipline and disability system and responsibility for administering and supervising lawyer discipline and disability is delegated to Board of Directors of State Bar); TEX.R. DISCIPLINARY P. 1.06(F), (I),

(K) & (N), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) ("Disciplinary Proceedings" defined as investigation and processing of an Inquiry or Complaint before a Disciplinary Action; "Inquiry" defined as any written matter concerning attorney conduct received by the Office of the Chief Disciplinary Counsel that, even if true, does not allege Professional Misconduct or Disability; "Complaint" defined as those written matters received by the Office of the Chief Disciplinary Counsel that, either on the face thereof or upon screening or preliminary investigation, allege Professional Misconduct or attorney Disability, or both, cognizable under these rules or the Texas Disciplinary Rules of Professional Conduct; "Disciplinary Action" defined as proceeding brought by or against an attorney before an evidentiary panel of a Committee or any judicial proceeding covered by Rules of Disciplinary Procedure). TEX.R. DISCIPLINARY P. 2.01–2.21, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) (setting out procedures to be followed by District Grievance Committees); TEX.R. DISCIPLINARY P. 4.01–4.08, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) (setting out procedures to be followed by Commission for Lawyer Discipline); TEX R. DISCIPLINARY P. 5.01–5.03, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) (setting out selection, duties and

The majority also suggests that it is construing Art. III, § 7 as it does because to do otherwise would render it unconstitutional, since it would conflict with § 38.122. In other words, if the state bar rule attempts to "alter or negate" 38.122, then it is unconstitutional. *Ante*, at 629. This is undoubtedly true, since a state bar rule cannot "trump" or override a statute enacted by the Legislature. To do so would surely violate TEX. CONST. art. II, § 1 (division of powers), as well as TEX. CONST. art. I, § 28 (only Legislature may suspend laws of the state).

However, for the majority to simply assert this truism as an answer is to put the cart before the horse. The real issue to determine is *whether or not* an interpretation of the Retroactivity Clause of Art. III, § 7 of the State Bar Rules that would prohibit prosecution under § 38.122 of the Penal Code would "negate or alter" § 38.122. As noted above, § 38.122 fully incorporates the concept of "good standing," as provided by the State Bar, without modification, and specifically does *not* modify that concept with the term "currently." Thus, a plain reading of § 38.122 indicates that it *defers* to the Bar's determination of "good standing." That is, if the Bar determines that a member was in good standing at a particular time, even retroactively, there is nothing, *by the terms of § 38.122 itself*, to be "altered or negated."

Finally, it is important to emphasize that such an interpretation of § 38.122, in conjunction with the Retroactivity Clause of Art. III, § 7 of the State Bar Rules, does not lead to an absurd result. It only prohibits criminal conviction, under § 38.122, of a member of the Bar who was not in good standing due solely to a failure to pay his dues and who held himself out as a lawyer during that time, but who subsequently paid such dues prior to indictment, and was retroactively deemed to be in good standing at that time. It does *not* prohibit prosecution, under § 38.122, of one who was not in good standing for any other reason for which retroactivity does not apply. Also, of course, it does *not* prohibit disciplinary action by the State Bar of one who was not in good standing due to a failure to pay his dues and who held himself out as a lawyer during that time. *See Commission for Lawyer Discipline v. Sherman,* 945 S.W.2d 227 (Tex.App.Houston [1st Dist.] 1997, no writ).[4]

Based on the above, I would hold that the evidence was legally insufficient to sustain the jury's finding that appellant was not in good standing with the State Bar, an essential element of § 38.122. Therefore, I would reverse the judgment of the Court of Appeals and set aside appellant's conviction.

For the foregoing reasons, I dissent.

accountability of Chief Disciplinary Counsel); TEX.R. DISCIPLINARY P. 6.05, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) (final disposition of any Disciplinary Proceeding or Disciplinary Action resulting in imposition of Sanction other than private reprimand shall be reported by Commission to the Clerk of the Supreme Court of Texas); TEX R. DISCIPLINARY P. 6.07, *reprinted in* TEX GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp. 1998) (relating to publication of final disposition of all Disciplinary Proceedings and Disciplinary Actions); TEX R. DISCIPLINARY P. 6.08, *reprinted in* TEX GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) (limiting access to confidential records, information, and proceedings relating to Disciplinary Proceeding, Disciplinary Action, or Disability suspension); TEX.R. DISCIPLINARY P. 7.01–7.12, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp. 1998) (setting out selection and procedures for Board of Disciplinary Appeals); TEX.R. DISCIPLIN-

ARY P. 15.04, *reprinted in* TEX. GOV'T CODE ANN, tit. 2, subtit. G, app. A–1 (Vernon Supp.1998) (the processing of an Inquiry, Complaint, Disciplinary Proceeding, or Disciplinary Action is not, except for good cause, to be delayed or abated because of substantial similarity to the material allegations in pending civil or criminal litigation).

4. The majority also justifies its decision by distinguishing our decisions in *Hill v. State,* 393 S.W.2d 901 (Tex.Crim.App.1965) and *Cantu v. State,* 930 S.W.2d 594 (Tex.Crim.App.1996) from the instant case. *Ante,* at 629. Because a plain reading of § 38.122 and the Retroactivity Clause of the State Bar Rules clearly prohibits appellant's conviction and does not lead to an absurd result, it is not necessary to discuss these cases. However, it is notable that the majority *factually* distinguishes *Hill* and *Cantu* from the instant case, but does not give an adequate basis to *legally* distinguish them.